UNITED STATES DISTRICT COURT **CV - 09   2368**
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

KEVIN EMMETT and BRENDA EMMETT,

                     Plaintiffs,

    -against-

THOMAS H. MILHORAT, M.D., PAOLO A.
BOLOGNESE, M.D., MISAO NISHIKAWA, M.D.,
THIERRY REMY, M.D., CHANLAND
ROONPRAPUNT, M.D., SOL MORA, M.D.,
JOHN X. CHEN, M.D., DORA PINKHASOVA,
M.D., NORTH SHORE – LONG ISLAND JEWISH
HEALTH SYSTEM, INC. , THE CHIARI
INSTITUTE and HARVEY CUSHING
INSTITUTES OF NEUROSCIENCE,

                    Defendants.

-----------------------------------------------------------------X

Civil Action No.:

(SI)

**COMPLAINT AND
DEMAND FOR
JURY TRIAL**

SPATT, J.

**FILED**
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

BOYLE, M.      JUN 0 4 2009    ★

LONG ISLAND OFFICE

Plaintiffs, **KEVIN EMMETT and BRENDA EMMETT,** by their attorneys,

**GOLDSMITH CTORIDES & RODRIGUEZ, L.L.P.,** as and for their Complaint against the

Defendants allege, upon information and belief, as follows:

### PRELIMINARY STATEMENT

1.     This case arises out of medical care and treatment received by the Plaintiff,

**KEVIN EMMETT,** at **THE CHIARI INSTITUTE, NORTH SHORE – LONG ISLAND**

**JEWISH HEALTH SYSTEM, INC. and the HARVEY CUSHING INSTITUTES OF**

**NEUROSCIENCE from Defendants THOMAS H. MILHORAT, M.D.,   PAOLO A.**

**BOLOGNESE M.D., MISAO NISHIKAWA, M.D., THIERRY REMY, M.D.,**

**CHANLAND ROONPRAPUNT, M.D., SOL MORA, M.D., JOHN X. CHEN, M.D., and**

**DORA PINKHASOVA, M.D.,** between July 2006 and December, 2008.

2.     The Defendants falsely advised the Plaintiff, KEVIN EMMETT, that he was

suffering from tethered cord syndrome.

3.      The Defendants thereafter recommended and performed surgery upon Plaintiff, KEVIN EMMETT, without advising him that said surgery was unnecessary and experimental and that he was being used as a human research subject.  Specifically, on December 5, 2006, Defendants, THOMAS H. MILHORAT, M.D. and CHANLAND ROONPRAPUNT, M.D., performed an invasive cervical traction upon the Plaintiff, KEVIN EMMETT, on the premises of Defendant, NORTH SHORE – LONG ISLAND JEWISH HEALTH SYSTEM, INC.   This procedure was followed on December 6, 2006, by spinal cord untethering surgery performed by Defendants, THOMAS H. MILHORAT, M.D. and PAOLO A. BOLOGNESE M.D. on the premises of Defendant, NORTH SHORE – LONG ISLAND JEWISH HEALTH SYSTEM, INC. The safety and efficacy of said "untethering" surgery as it relates to a patient allegedly suffering from tethered cord syndrome and Chiari Malformation has never been proven by any published peer-reviewed medical or scientific study.  Defendants recommended and performed this surgery solely for their financial gain.  Defendants utilized the Plaintiff, KEVIN EMMETT, as a human research subject without his consent, solely for financial gain.  The tethered cord surgery did not improve the Plaintiff, KEVIN EMMETT's Chiari symptoms. To the contrary, the Plaintiff has been caused to suffer severe and irreversible damages that will impact the rest of his life.

4.      Further, on June 6, 2007, Defendants, THOMAS H. MILHORAT, M.D. and PAOLO A. BOLOGNESE M.D. performed posterior fossa revision surgery upon the Plaintiff, KEVIN EMMETT, on the premises of Defendant, NORTH SHORE – LONG ISLAND JEWISH HEALTH SYSTEM, INC.  Immediately after the June 6, 2007 surgery, the Plaintiff, KEVIN EMMETT, was advised that, because he suffered from Ehler's Danlos Syndrome, a hereditary connective tissue disease, which the Defendants indicated they saw during the surgery of June 6th, he would require additional surgery to rectify his cervical instability.  Accordingly, on

2

August 3, 2007, Defendants, THOMAS H. MILHORAT, M.D. and THIERRY REMY, M.D. performed a second invasive cervical traction upon the Plaintiff, KEVIN EMMETT, on the premises of Defendant, NORTH SHORE – LONG ISLAND JEWISH HEALTH SYSTEM, INC., and on August 6, 2007, Defendants, THOMAS H. MILHORAT, M.D. and PAOLO A. BOLOGNESE, M.D. performed a posterior fossa revision with remodeling of the supraocciput portion of the skull to accommodate cranial instrumentation, resection of the dorsal spine, C3 through C6, a craniocervical fusion and extraction with implantation of internal fixation devices upon the Plaintiff, KEVIN EMMETT, on the premises of Defendant, NORTH SHORE – LONG ISLAND JEWISH HEALTH SYSTEM, INC.  The Plaintiff, KEVIN EMMETT, was incorrectly diagnosed with Ehler's Danlos Syndrome and the surgery on June 6, 2007 was improperly performed, thereby causing the Plaintiff, KEVIN EMMETT, to develop cranio cervical instability, a condition from which he did not suffer prior to that time.  As a result, the surgery performed on August 6, 2007 was unnecessary.  As a result of these surgeries, Plaintiff, KEVIN EMMETT, has been caused to suffer severe and irreversible damages that will impact the rest of his life.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1332 based upon the diversity of citizenship of the Plaintiffs and the Defendants and since this action seeks damages in excess of SEVENTY FIVE THOUSAND ($75,000.00) DOLLARS, exclusive of interest and costs.

6.      Venue is proper in this district pursuant to 28 U.S.C. 1391(a).

3

## THE PARTIES

7.      At all times hereinafter mentioned, Plaintiff, **KEVIN EMMETT**, resided at 6323 West 475 South, Owensville, County of Gibson, State of Indiana.

8.      At all times hereinafter mentioned, Plaintiff, **BRENDA EMMETT**, resided at 6323 West 475 South, Owensville, County of Gibson, State of Indiana.

9.      At all times hereinafter mentioned, THOMAS H. MILHORAT, M.D. (hereinafter referred to as **"MILHORAT"**), was and is a physician duly licensed to practice medicine in the State of New York and a citizen of the State of New York, practicing medicine in Nassau County, at 865 Northern Boulevard, Great Neck, New York 11021.

10.     At all times hereinafter mentioned, Defendant, MILHORAT, held himself out to the public as a specialist in the area of neurosurgery.

11.     At all times hereinafter mentioned, PAOLO A. BOLOGNESE, M.D. (hereinafter referred to as **"BOLOGNESE"**), was and is a physician duly licensed to practice medicine in the State of New York and a citizen of the State of New York, practicing medicine in Nassau County, at 865 Northern Boulevard, Great Neck, New York 11021.

12.     At all times hereinafter mentioned, Defendant, BOLOGNESE, held himself out to the public as a specialist in the area of neurosurgery.

13.     At all times hereinafter mentioned, MISAO NISHIKAWA, M.D., (hereinafter referred to as **"NISHIKAWA"**), was and is an unlicensed physician, practicing medicine without a license in Nassau County, at 865 Northern Boulevard, Great Neck, New York 11021.

14.     At all times hereinafter mentioned, Defendant, NISHIKAWA, held himself out to the public as a specialist in the area of pathophysiology.

4

15.     At all times hereinafter mentioned, Defendants, MILHORAT, BOLOGNESE, REMY, ROONPRAPUNT, MORA, CHEN, PINKHASOVA, NORTH SHORE – LONG ISLAND JEWISH HEALTH SYSTEM, INC., THE CHIARI INSTITUTE and HARVEY CUSHING INSTITUTES OF NEUROSCIENCE knew or should have known that Defendant, NISHIKAWA was and is an unlicensed physician, practicing medicine without a license in Nassau Country, at 865 Northern Boulevard, Great Neck, New York 11021.

16.     At all times hereinafter mentioned, Defendants, MILHORAT, BOLOGNESE, REMY, ROONPRAPUNT, MORA, CHEN, PINKHASOVA, NORTH SHORE – LONG ISLAND JEWISH HEALTH SYSTEM, INC., THE CHIARI INSTITUTE and HARVEY CUSHING INSTITUTES OF NEUROSCIENCE held Defendant, NISHIKAWA out as a physician licensed to practice medicine in the State of New York and the world's leading expert on morphometrics.

17.     At all times hereinafter mentioned, THIERRY REMY, M.D. (hereinafter referred to as "REMY"), was and is a physician duly licensed to practice medicine in the State of New York and a citizen of the State of New York, practicing medicine in Nassau County, at 865 Northern Boulevard, Great Neck, New York 11021.

18.     At all times hereinafter mentioned, Defendant, REMY, held himself out to the public as a specialist in the area of neurosurgery.

19.     At all times hereinafter mentioned, CHANLAND ROONPRAPUNT, M.D. (hereinafter referred to as "ROONPRAPUNT"), was and is a physician duly licensed to practice medicine in the State of New York and a citizen of the State of New York, previously practicing medicine in Nassau County, at 865 Northern Boulevard, Great Neck, New York 11021, and

5

currently practicing medicine in New York County, at 1000 Tenth Avenue, Suite 5G-80, New York, NY 10019.

20.     At all times hereinafter mentioned, Defendant, ROONPRAPUNT, held himself out to the public as a specialist in the area of neurosurgery.

21.     At all times hereinafter mentioned, SOL MORA, M.D. (hereinafter referred to as "**MORA**"), was and is a physician duly licensed to practice medicine in the State of New York and a citizen of the State of New York, practicing medicine in Nassau County, at 865 Northern Boulevard, Great Neck, New York 11021.

22.     At all times hereinafter mentioned, Defendant, MORA, held himself out to the public as a specialist in the area of neurology.

23.     At all times hereinafter mentioned, JOHN X. CHEN, M.D. (hereinafter referred to as "**CHEN**"), was and is a physician duly licensed to practice medicine in the State of New York and a citizen of the State of New York, previously practicing medicine in Nassau County, at 865 Northern Boulevard, Great Neck, New York 11021, and currently practicing medicine at 1275 York Avenue, New York, New York 10065.

24.     At all times hereinafter mentioned, Defendant, CHEN, held himself out to the public as a specialist in the area of neurology.

25.     At all times hereinafter mentioned, DORA PINKHASOVA, M.D. (hereinafter referred to as "**PINKHASOVA**"), was and is a physician duly licensed to practice medicine in the State of New York and a citizen of the State of New York, previously practicing medicine in Nassau County, at 865 Northern Boulevard, Great Neck, New York 11021, and currently practicing medicine at 550 First Avenue, New York, NY 10016.

26.     At all times hereinafter mentioned, Defendant, PINKHASOVA, held herself out to the public as a specialist in the area of neurology.

27.     At all times hereinafter mentioned, Defendant, NORTH SHORE – LONG ISLAND JEWISH HEALTH SYSTEM, INC. (hereinafter referred to as **"NORTH SHORE - LIJ"**), was and is a corporation duly organized and existing under the laws of the State of New York.

28.     At all times hereinafter mentioned, Defendant, NORTH SHORE - LIJ, by its agents, servants and employees, controlled, managed and operated the hospital located at 300 Community Drive, Manhasset, New York 11030, in the State of New York, County of Nassau, for the care and treatment of persons afflicted with illness and disease.

29.     At all times hereinafter mentioned, THE CHIARI INSTITUTE (hereinafter referred to as **"TCI"**), was and is a corporation or other professional association, duly organized and existing under the laws of the State of New York, located at 865 Northern Boulevard, Great Neck, New York 11021.

30.     At all times hereinafter mentioned, the Defendant, TCI, was and is owned, controlled, managed and operated by Defendant, NORTH SHORE – LIJ.

31.     At all times hereinafter mentioned, the Defendant, TCI, was and is controlled, managed and operated by the Board of Directors of Defendant, NORTH SHORE – LIJ.

32.     At all times hereinafter mentioned, HARVEY CUSHING INSTITUTES FOR NEUROSCIENCE (hereinafter referred to as **"HARVEY CUSHING"**), was and is a corporation or other professional association, duly organized and existing under the laws of the State of New York, located at 865 Northern Boulevard, Great Neck, New York 11021.

33.     At all times hereinafter mentioned, the Defendant, HARVEY CUSHING, was and is owned, controlled, managed and operated by Defendant, NORTH SHORE – LIJ.

34.     At all times hereinafter mentioned, the Defendant, HARVEY CUSHING, was and is controlled, managed and operated by the Board of Directors of Defendant, NORTH SHORE – LIJ.

35.     At all times hereinafter mentioned, Defendant, NORTH SHORE – LIJ and its Board of Directors, were responsible for the medical care rendered and the medical research being performed at Defendant, TCI.

36.     At all times hereinafter mentioned, Defendant, NORTH SHORE – LIJ and its Board of Directors, were responsible for the medical care rendered and the medical research being performed at Defendant, HARVEY CUSHING.

37.     At all times hereinafter mentioned, Defendant, MILHORAT, was an agent, servant and/or employee of Defendant, NORTH SHORE – LIJ.

38.     At all times hereinafter mentioned, Defendant, MILHORAT, was a private attending physician with privileges to admit patients to Defendant, NORTH SHORE – LIJ.

39.     At all times hereinafter mentioned, Defendant, MILHORAT, was the Chief of Neurosurgery at Defendant, NORTH SHORE – LIJ.

40.     At all times hereinafter mentioned, Defendant, MILHORAT, was an agent, servant and/or employee of Defendant, TCI.

41.     At all times hereinafter mentioned, Defendant, MILHORAT, was the Director of Defendant, TCI, and was responsible for overseeing the medical care rendered and the medical research being performed at said facility.

8

42. At all times hereinafter mentioned, Defendant, MILHORAT, was the Director of Defendant, HARVEY CUSHING, and was responsible for overseeing the medical care rendered and the medical research being performed at said facility.

43. At all times hereinafter mentioned, Defendant, MILHORAT, was an agent, servant and/or employee of Defendant, HARVEY CUSHING.

44. At all times hereinafter mentioned, Defendant, BOLOGNESE, was an agent, servant and/or employee of Defendant, NORTH SHORE – LIJ.

45. At all times herein mentioned, Defendant, BOLOGNESE, was an attending physician with privileges to admit patients to Defendant, NORTH SHORE – LIJ.

46. At all times hereinafter mentioned, Defendant BOLOGNESE was not, and is not board certified in neurosurgery, or in any area of medicine.

47. At all times hereinafter mentioned, Defendant, BOLOGNESE, was an agent, servant and/or employee of Defendant, TCI.

48. At all times hereinafter mentioned, Defendant, BOLOGNESE, was an agent, servant and/or employee of Defendant, HARVEY CUSHING.

49. At all times hereinafter mentioned, Defendant, BOLOGNESE, was the Assistant Director of TCI, and was responsible for overseeing the medical care rendered and the medical research being performed at said facility.

50. At all times hereinafter mentioned, Defendant, BOLOGNESE, was the Assistant Director of HARVEY CUSHING, and was responsible for overseeing the medical care rendered and the medical research being performed at said facility.

51. At all times hereinafter mentioned, Defendant, NISHIKAWA, was an agent, servant and/or employee of Defendant, NORTH SHORE – LIJ.

9

52.     At all times hereinafter mentioned, Defendant NISHIKAWA, was an agent, servant and/or employee of Defendant, TCI.

53.     At all times hereinafter mentioned, Defendant, NISHIKAWA, was not a resident at Defendant, NORTH SHORE – LIJ.

54.     At all times hereinafter mentioned, Defendant, NISHIKAWA, was an agent, servant and/or employee of Defendant, HARVEY CUSHING.

55.     At all times hereinafter mentioned, Defendant, REMY, was an agent, servant and/or employee of Defendant, NORTH SHORE – LIJ.

56.     At all times hereinafter mentioned, Defendant, REMY, was a neurosurgical fellow with privileges to admit patients to Defendant, NORTH SHORE – LIJ.

57.     At all times hereinafter mentioned, Defendant, REMY, was an agent, servant and/or employee of Defendant, TCI.

58.     At all times hereinafter mentioned, Defendant, REMY, was an agent, servant and/or employee of Defendant, HARVEY CUSHING.

59.     At all times hereinafter mentioned, Defendant, ROONPRAPUNT, was an agent, servant and/or employee of Defendant, NORTH SHORE – LIJ.

60.     At all times hereinafter mentioned, Defendant, ROONPRAPUNT, was an attending physician with privileges to admit patients to Defendant, NORTH SHORE – LIJ.

61.     At all times hereinafter mentioned, Defendant, ROONPRAPUNT, was an agent, servant and/or employee of Defendant, TCI.

62.     At all times hereinafter mentioned, Defendant, ROONPRAPUNT, was an agent, servant and/or employee of Defendant, HARVEY CUSHING.

63.     At all times hereinafter mentioned, Defendant, MORA, was an agent, servant and/or employee of Defendant, NORTH SHORE – LIJ.

64.     At all times hereinafter mentioned, Defendant, MORA, was an attending physician with privileges to admit patients to Defendant, NORTH SHORE – LIJ.

65.     At all times hereinafter mentioned, Defendant, MORA, was an agent, servant and/or employee of Defendant, TCI.

66.     At all times hereinafter mentioned, Defendant, MORA, was an agent, servant and/or employee of Defendant, HARVEY CUSHING.

67.     At all times hereinafter mentioned, Defendant, CHEN, was an agent, servant and/or employee of Defendant, NORTH SHORE – LIJ.

68.     At all times hereinafter mentioned, Defendant, CHEN, was an attending physician with privileges to admit patients to Defendant, NORTH SHORE – LIJ.

69.     At all times hereinafter mentioned, Defendant, CHEN, was an agent, servant and/or employee of Defendant, TCI.

70.     At all times hereinafter mentioned, Defendant, CHEN, was an agent, servant and/or employee of Defendant, HARVEY CUSHING.

71.     At all times herein mentioned, Defendant, PINKHASOVA, was an agent, servant and/or employee of Defendant, NORTH SHORE – LIJ.

72.     At all times herein mentioned, Defendant, PINKHASOVA, was an attending physician with privileges to admit patients to Defendant, NORTH SHORE – LIJ.

73.     At all times hereinafter mentioned, Defendant, PINKHASOVA, was an agent, servant and/or employee of Defendant, TCI.

11

74.    At all times hereinafter mentioned, Defendant, PINKHASOVA, was an agent, servant and/or employee of Defendant, HARVEY CUSHING.

## FACTUAL SUMMARY

75.    Plaintiff, **KEVIN EMMETT**, was born on April 20, 1964.

76.    In or about November 2005, as a result of suffering symptoms, including headaches, neck pain, dizziness and blurred vision, the Plaintiff was evaluated and diagnosed with Chiari I Malformation.

77.    Chiari Malformation is a condition in which brain tissue protrudes into the spinal canal.   There are several different forms of Chiari Malformation. The most common type is the Chiari I Malformation. In normal anatomy, the cerebellar tonsils are located just above the level of the foramen magnum. In an individual with Chiari I, the tonsils hang below the level of the foramen magnum into the spinal canal.

78.    Plaintiff, KEVIN EMMETT, underwent a suboccipital craniectomy with C1 laminectomy and a partial C2 laminectomy with duraplasty in February 2006 at the Cleveland Clinic in Cleveland, Ohio to relieve his Chiari Malformation related symptoms.   This surgery only alleviated his symptoms for a brief period.

79.    The Plaintiff, KEVIN EMMETT, following an internet search, found and reviewed the website of the Defendant, The Chiari Institute, a Division of North Shore – Long Island Jewish Medical Health System, Inc., and went to said facility for an evaluation as a result of the contents of and representations contained on said website.

80.    That the Defendant, The Chiari Institute, a Division of North Shore – Long Island Jewish Medical Health System, Inc., caused a website to be created, managed, and operated to,

12

*inter alia*, set forth content for and make representations to consumers of medical services in New York State and throughout the United States.

81.     The website of TCI advertises to the public that the physicians at said facility have expertise in the treatment of Chiari Malformations, and other related conditions.   In addition, the website advertises to the public that the physicians at said facility have expertise in performing revision surgeries for patients whose prior surgeries have not resolved their symptoms.

82.     The website of TCI advertises to the public that "the neurosurgeons of The Chiari Institute have made major contributions to the basic sciences of Chiari Malformation (CM) and syringomyelia". Upon information and belief, Defendants knew such statement was false.

83.     The website of TCI advertises to the public that it carries out "research projects" supported by a $17.5 million dollar grant from the National Institutes of Health (NIH).

84.     The NIH grant advertised on TCI's website does not exist.  Upon information and belief, Defendants knew that the NIH grant advertised on TCI's website does not exist.

85.     The website of the Defendant, TCI, posts a video presentation by Defendant, BOLOGNESE, entitled "Tethered Cord Syndrome."

86.     The video presentation by Defendant, BOLOGNESE, contains knowingly false and misleading information regarding occult tethered cord syndrome.

87.     Defendant, BOLOGNESE, states on said video presentation that when the filum terminale becomes too thick and too tense it creates a downward pull on the spinal cord, without informing the public that there are no scientific studies or peer reviewed medical literature, supporting this conclusion.

13

Upon information and belief, Defendant, BOLOGNESE, knew that there are no scientific studies or peer reviewed medical literature supporting this conclusion.

88. Defendant, BOLOGNESE, claims in the video presentation that Defendant, TCI, has developed the "TCI Special," a system for diagnosing occult tethered cord syndrome by utilizing clinical data, radiologic studies, stimulation tests and morphometrics.

89. Defendant, BOLOGNESE, fails to inform the public that the concept of morphometrics as it relates to occult tethered cord syndrome is a diagnostic tool developed by Defendant, NISHIKAWA, an employee of Defendant, TCI, who is not licensed to practice medicine in the State of New York. Upon information and belief, Defendant, BOLOGNESE, knew that Defendant, NISHIKAWA, was not licensed to practice medicine in the State of New York.

90. Defendant, BOLOGNESE, fails to inform the public in the video presentation that the concept of morphometrics has not been widely studied or written about in the scientific or peer reviewed medical literature as it relates to occult tethered cord syndrome. Upon information and belief, Defendant, BOLOGNESE, knew that the concept of morphometrics has not been widely studied or written about in the scientific or peer reviewed medical literature as it relates to occult tethered cord syndrome.

91. Defendant, BOLOGNESE, on said video presentation fails to advise the public that no scientific or medical proof exists proving that morphometrics is useful and efficacious in the diagnosis of occult tethered cord.

Upon information and belief, Defendant, BOLOGNESE, knew that no scientific or medical proof exists proving that morphometrics is useful and efficacious in the diagnosis of occult tethered cord.

Upon information and belief, Defendants, BOLOGNESE and MILHORAT, rely on Defendant, NISHIKAWA'S, interpretations of radiological studies in making the diagnosis of occult tethered cord sydrome, even though Defendant, NISHIKAWA, is not a physician licensed to practice medicine in the State of New York.

92.     Defendant, BOLOGNESE, fails to inform the public on said video presentation that he and Defendant, MILHORAT, rely on Defendant, NISHIKAWA'S, interpretations of radiological studies in making the diagnosis of occult tethered cord, even though Defendant, NISHIKAWA, is not a physician licensed to practice medicine in the State of New York.

93.     The Plaintiff, KEVIN EMMETT, was evaluated at Defendant TCI, by the Defendants who diagnosed him with having a hereditary disorder of the connective tissue, which Plaintiff was later advised by the Defendants was Ehler's Danlos Syndrome.  In addition, the Defendants advised the Plaintiff that he was not an immediate candidate for tethered cord surgery because of mixed diagnostic results, including negative stimulation tests and normal urodynamic test results.  The Defendants further advised him that he should have posterior fossa revision surgery to correct what Defendants advised Plaintiff was a failed Chiari surgery.

94.     The Plaintiff, KEVIN EMMETT, was scheduled to have posterior fossa revision surgery performed in December 2006.  When Plaintiff returned to Defendant, TCI, in December, he was advised that, instead of the procedure to which he had already consented, he was a candidate for tethered cord surgery, that he would recover more quickly from the tethered cord surgery than the revision surgery, and that the tethered cord surgery may cure many, if not all, of his symptoms, and that he may not require the posterior fossa revision surgery if he had the tethered cord surgery.

15

95.     The Defendants, through their deceptive advertising on their website and lecture presentation materials available on the internet, and through the deceptive direct statements made to the Plaintiff, KEVIN EMMETT, misled the Plaintiff into believing that by having surgery to correct the tethered cord, his Chiari I Malformation would improve.  Upon information and belief, Defendants knew such statement was false.

96.     The Defendants misled the Plaintiffs through their deceptive advertising on their website and lecture presentation materials available on the internet, and through the deceptive direct statements made to the Plaintiff, KEVIN EMMETT, into believing that the tethered cord surgery would cause the cerebellar tonsils to retract above the level of the foramen magnum.  Upon information and belief, Defendants knew such statement was false.

97.     The Defendants, through their deceptive advertising on their website and lecture presentation materials available on the internet, and through the deceptive direct statements made to the Plaintiff, KEVIN EMMETT, represented to Plaintiff, KEVIN EMMETT, that by not having the tethered cord surgery, the tethered cord would start to pull more and more, causing a worsening of the tonsillar herniation.  Upon information and belief, Defendants knew such statement was false.

98.     The Defendants, through their deceptive advertising on their website and lecture presentation materials available on the internet, and through the deceptive direct statements made to the Plaintiff, KEVIN EMMETT, represented to Plaintiff, KEVIN EMMETT, that if he had tethered cord surgery he might not need Chiari decompression surgery in the future.  Upon information and belief, Defendants knew such statement was false.

99.    The Defendants represented to Plaintiff, KEVIN EMMETT, that tethered cord surgery was a very safe procedure.   Upon information and belief, Defendants knew such statement was false.

100.    The Defendants failed to advise Plaintiff, KEVIN EMMETT, that occult tethered cord is a highly controversial subject in the field of neurosurgery.   Upon information and belief, Defendants knew that occult tethered cord is a highly controversial subject in the field of neurosurgery.

101.    The Defendants' representations misled the Plaintiff into believing that the tethered cord surgery would lead to an improvement of the Plaintiff, KEVIN EMMETT'S, Chiari symptoms which included headaches, neck pain, visual disturbances, dizziness, and other symptoms.   Upon information and belief, Defendants knew that these representations were false.

102.    The Defendants' representations misled the Plaintiffs into believing that there is an association between tethered cord syndrome and Chiari I malformation and that by operating upon the Tethered Cord, the Chiari I malformation would be corrected as well.   Upon information and belief, Defendants knew that these representations were false.

103.    The Defendants misled the Plaintiff into believing that surgery to correct the tethered cord is safe and rarely leads to complications.

104.    The Defendants did not advise the Plaintiff that surgery on occult tethered cords has not been widely studied in the scientific and medical community, and that no causal connection between tethered cord and Chiari I Malformation has been proven.

105.    The Defendants did not advise the Plaintiff that there were no published peer reviewed medical studies in existence establishing that performing surgery on an occult tethered cord provides benefit for the patient undergoing such surgery.

106.    That Defendants did not advise the Plaintiff that articles written by physicians associated with Defendant, TCI, on the topic of occult tethered cord and Chiari I Malformation had been submitted for publication, but had been rejected by peer reviewed medical journals.

107.    The Plaintiff, KEVIN EMMETT, underwent surgery to allegedly fix his tethered cord on December 6, 2006 at Defendant, NORTH SHORE – LIJ, which was performed by Defendants MILHORAT and BOLOGNESE.

108.    Defendant, MILHORAT, acted as the primary surgeon and was assisted during the procedure by Defendant, BOLOGNESE.

109.    Post-operatively, Plaintiff, KEVIN EMMETT's, wife Plaintiff, BRENDA EMMETT, was advised by Defendants, BOLOGNESE and MILHORAT, that Plaintiff, KEVIN EMMETT'S, tethered cord had sprung like a rubber band when it was cut, an indication that the surgery was warranted.

110.    Defendants, MILHORAT and BOLOGNESE, charged in excess of FIFTY THOUSAND ($50,000.00) DOLLARS to perform the tethered cord surgery.

111.    The Plaintiff's, KEVIN EMMETT, condition worsened following the performance of the tethered cord surgery.

112.    The Plaintiff, KEVIN EMMETT, developed significant injuries following the performance of the tethered cord surgery, including but not limited to worsened Chiari herniation, chronic lower back pain and other complications and injuries.

113.    The tethered cord surgery did not relieve the Plaintiff's symptoms, and instead, created additional symptoms.  Accordingly, the Plaintiff, KEVIN EMMETT, underwent the originally planned posterior fossa revision surgery on June 6, 2007. The Defendants improperly performed this surgery, thereby causing the Plaintiff, KEVIN EMMETT, to develop cranio

cervical instability, a condition he did not suffer from prior to that. Immediately following that surgery, Plaintiff's wife was advised that he suffered from Elher's Danlos Syndrome, a genetic disorder affecting collagen synthesis, and that because of the Elher's Danlos Syndrome, he would need a further surgery to remedy his cranio cervical instability.

114. Accordingly, on August 6, 2007, the Plaintiff, KEVIN EMMETT, underwent a further fossa revision surgery consisting of remodeling of the supraocciput to accommodate cranial instrumentation, resection of dorsal spine C3 through C6, and craniocervical fusion with insertion of internal hardware. As a result of this surgery, the Plaintiff has limited mobility in his neck and other complications and injuries.

115. Subsequent to the August 6, 2007 surgery, the Plaintiff was evaluated by two physicians unaffiliated with Defendant TCI who informed him that he did not have Elher's Danlos syndrome. The Defendants' diagnosis of the Plaintiff KEVIN EMMETT with Ehler's Danlos Syndrome was false, said diagnosis having been made solely for the purpose of convincing the Plaintiff that he required additional surgery, to wit, craniocervical fusion. The Defendants made the diagnosis of Ehler's Danlos Syndrome solely to induce the Plaintiff to have additional surgery that would benefit them financially.

116. The Defendants induced the Plaintiff, KEVIN EMMETT, to have experimental tethered cord surgery, solely for their financial gain, full well knowing that there is no scientific or medical proof that surgery for occult tethered cord syndrome provides any real improvement of the patients' symptomatology.

117. The Defendant, BOLOGNESE, presented a lecture at the meeting of the Association of Syringomylia held in July, 2008, in Arlington, Virginia, which is available on the

internet wherein he stated that a prospective study in tethered cord surgery was being performed at Defendant, TCI.

118.    The Defendants, performed experimental surgery upon the Plaintiff, without advising the Plaintiff that the surgery was experimental in nature, or that his case would be studied and included in a nationwide study that was being performed on a condition known as Elher's Danlos Syndrome, which the Defendants claimed was connected to Tethered Cord Syndrome.

119.    During a follow-up consultation with Defendant, BOLOGNESE, Plaintiff was provided with a copy of the "author's proof" of a 2007 article subsequently published in the Journal of Neurosurgery of the Spine, the subject matter of which concerned Chiari Malformation and hereditary disorders of the connective tissues.  Defendant, BOLOGNESE, at that time advised Plaintiff, KEVIN EMMETT, that he was a subject in that study.

120.    Upon information and belief, pathologic studies were performed upon specimens removed from the Plaintiff's body during the unnecessary and not indicated Tethered Cord Surgery, solely for purposes of gathering information for the various studies without his consent.

121.    The Defendants neither advised the Plaintiff about the experimental nature of the surgery, nor did the Defendants ask the Plaintiff to sign a consent form of the type that would be required when human experimentation is taking place.

122.    The Plaintiff, KEVIN EMMETT, now suffers from significant injuries arising from the performance of the unnecessary and medically useless surgery performed on December 6, 2006 by Defendants, MILHORAT and BOLOGNESE, at Defendant, NORTH SHORE – LIJ, the improperly performed surgery on June 6, 2007, and the unnecessary and medically useless surgery performed on August 6, 2007 by Defendants, MILHORAT and BOLOGNESE, at

20

Defendant, NORTH SHORE – LIJ; some of these injuries include but are not limited to: worsening Chiari herniation, chronic lower back pain and limitation on range of motion of his neck.   In addition, because of these additional unnecessary surgeries, Plaintiff, KEVIN EMMETT, was unable to return to work within a specified time period which resulted in him losing a high paying job and suffering lost earnings.

### AS AND FOR A FIRST CAUSE OF ACTION (MEDICAL MALPRACTICE)

123.    That Plaintiff, **KEVIN EMMETT**, came under the care of the Defendants, **MILHORAT, BOLOGNESE, NISHIKAWA, REMY, ROONPRAPUNT, MORA, CHEN, PINKHASOVA, TCI, HARVEY CUSHING and NORTH SHORE - LIJ**, in or about July, 2006.

124.    That the Defendants, MILHORAT, BOLOGNESE, NORTH SHORE – LIJ, TCI and HARVEY CUSHING, performed surgery upon Plaintiff, KEVIN EMMETT, on December 6, 2006, June 6, 2007 and August 6, 2007.

125.    That the Plaintiff, KEVIN EMMETT, continued to receive care from each of these Defendants until approximately December, 2008.

126.    At all times herein mentioned, the Defendants had a duty to use reasonable and proper care in their efforts to care for, treat and medicate said Plaintiff.

127.    That the Defendant, NORTH SHORE – LIJ, in rendering services to the Plaintiff, owed him the duty to use the degree of care, skill and diligence used by hospitals generally in the community.

128.    That the Defendants, jointly and severally, acting by themselves and through their agents, failed to use due, reasonable and proper care in treating the Plaintiff and deviated from accepted standards of medical care prevailing in the area of neurology and neurosurgery, and the

Defendants failed to exercise the knowledge, skill and diligence, which as physicians they should have possessed and exercised on behalf of the Plaintiff, and were otherwise careless and negligent.

129. That as a result of the foregoing, the Plaintiff, KEVIN EMMETT, has sustained serious, severe and irreversible personal injuries, and pain and suffering, and lost earnings.

130. That solely as a result of the aforesaid injuries due to the improper care and treatment on the part of the Defendants, the Plaintiff, KEVIN EMMETT, has been subjected to repeated medical therapy, examinations, tests, medications, hospitalizations, and other care, and the Plaintiff, KEVIN EMMETT, will continue to require such further treatment in the future.

131. That the Plaintiff, KEVIN EMMETT, has sustained the injuries and damages set forth solely by reason of the carelessness, negligence and lack of skill of the Defendants, without any negligence or carelessness on the part of Plaintiff, KEVIN EMMETT.

132. That the Plaintiff, KEVIN EMMETT, is entitled to monetary damages stemming from this cause of action in the sum of TEN MILLION ($10,000,000.00) DOLLARS.

## AS AND FOR A SECOND CAUSE OF ACTION

### (LACK OF INFORMED CONSENT)

133. Plaintiff, **KEVIN EMMETT**, repeats and realleges each and every allegation contained in Paragraphs numbered **"1"** through **"132"**, inclusive, of this Verified Complaint, with the same force and effect as if set forth herein at length.

134. The Defendants were under a duty and obligation to advise and inform the Plaintiffs, KEVIN EMMETT, of inherent dangers, risks, and consequences of the medical treatment and procedures recommended by the Defendants, and that the Defendants failed,

neglected, and/or refused to advise, inform, notify the Plaintiffs, KEVIN EMMETT, of the apparent risk and possible complications and dangers which might result in the aforesaid procedures and/or treatment recommended.

135.   Defendants failed, neglected, and/or refused to inform, advise, notify, and counsel the Plaintiff, KEVIN EMMETT, of the possible inherent dangers and risks of said procedures and treatment recommended and performed, and failed to advise and inform the Plaintiff, KEVIN EMMETT, of any other method of treatment which might have been used to alleviate the condition from which the Plaintiffs, KEVIN EMMETT, was suffering.

136.   Said failure to advise, inform, notify, and counsel the Plaintiff, KEVIN EMMETT, did not afford them adequate knowledge and information so as to determine whether or not they should submit to the aforesaid treatment and, therefore, the Plaintiff, KEVIN EMMETT, did not give his informed consent, based upon adequate knowledge of the risks and dangers of the procedures; but rather, consented based upon information which was inadequate and insufficient upon which to base a decision to submit to the said procedure.

137.   By reason of the aforesaid, the treatment given herein was not based upon adequate and sufficient knowledge or informed consent.

138.   Plaintiff, KEVIN EMMETT, has sustained the injuries and damages, as set forth, solely by reason of the carelessness, negligence, and unskillfulness of the Defendants, and each of them, without negligence or carelessness on their parts contributing thereto.

139.   That the Plaintiff, KEVIN EMMETT, is entitled to monetary damages stemming from this cause of action in the sum of TEN MILLION ($10,000,000.00) DOLLARS.

## AS AND FOR A THIRD CAUSE OF ACTION

### (FRAUD)

140.    The Plaintiff, **KEVIN EMMETT,** repeats and realleges each and every allegation contained in Paragraphs numbered **"1"** through **"139"**, inclusive, of this Verified Compliant, with the same force and effects as if set forth herein at length.

141.    That on or about December 6, 2006, June 6, 2007 and August 6, 2007, Plaintiff, KEVIN EMMETT, had surgery at NORTH SHORE – LIJ, performed by Defendants, MILHORAT and BOLOGNESE.

142.    That Plaintiff, KEVIN EMMETT, was fraudulently induced into having surgery by Defendants, MILHORAT, BOLOGNESE, NISHIKAWA, REMY, ROONPRAPUNT, MORA, CHEN, PINKHASOVA, TCI, HARVEY CUSHING and NORTH SHORE – LIJ.

143.    That the Defendants falsely advised the Plaintiff that he was suffering from tethered cord syndrome, and that said Defendants knew these statements were false when made.

144.    That the Defendants falsely advised the Plaintiff that he needed tethered cord surgery, and that said Defendants knew these statements were false when made.

145.    That the Defendants falsely advised the Plaintiff that by undergoing tethered cord surgery, there would be a retraction of the cerebral tonsils, and that said Defendants knew these statements were false when made.

146.    That the Defendants falsely advised the Plaintiff that by undergoing tethered cord surgery, he would see an improvement in his Chiari I malformation, and that said Defendants knew these statements were false when made.

147.    That Defendants falsely advised the Plaintiff that because of his having Ehler's Danlos Syndrome, he would have instability in his spine and would require a craniocervical fusion.

148.    That these representations were falsely made, and in truth the Plaintiff neither suffered from tethered cord syndrome nor Ehler's Danlos Syndrome and, in fact, there was no published medical or scientific proof that Chiari symptoms or Chiari I malformation can be improved through the performance of tethered cord surgery.

149.    That in fact, the Defendants failed to inform the Plaintiff that tethered cord surgery can adversely affect the patient.

150.    That the Defendants fraudulently advised the Plaintiff on their website that Defendants, TCI and HARVEY CUSHING are supported by a $17.5 million dollar grant from the NIH which in fact, does not exist.

151.    That Defendant, BOLOGNESE, in the video presentation entitled "Tethered Cord Syndrome" posted on Defendant, TCI's, website, knowingly and with intent to deceive, advised the public that the Defendants had developed the "TCI Special," a diagnostic system enabling them to diagnose occult tethered cord through the evaluation of clinical, radiological and stimulation data, and morphometrics.

152.    That Defendant, BOLOGNESE, in the video presentation entitled "Tethered Cord Syndrome" posted on Defendant, TCI's, website, knowingly and with intent to deceive failed to advise the public that the use of morphometrics in the diagnosis of occult tethered cord, is a concept developed by Defendant, NISHIKAWA, an employee by Defendant, TCI, who is an unlicensed physician in the State of New York.

153.     That Defendant, BOLOGNESE, in the video presentation entitled "Tethered Cord Syndrome" posted on Defendant, TCI's, website, knowingly and with intent to deceive failed to advise the public that morphometrics has not been accepted as a standard diagnostic tool for occult tethered cord syndrome.

154.     That Defendant BOLOGNESE in the video presentation entitled "Tethered Cord Syndrome" posted on Defendant TCI's website knowingly and with intent to deceive failed to advise the public that there are no scientific studies or peer reviewed medical literature in existence demonstrating that morphometrics is useful and efficacious in the diagnosis of occult tethered cord syndrome.

155.     That Defendant, BOLOGNESE, knowingly and with intent to deceive failed to advise the public in the video presentation on Tethered Cord Syndrome posted on Defendant, TCI's, website, that he and Defendant, MILHORAT, rely upon Defendant, NISHIKAWA'S, interpretation of various radiological studies, and his morphometric calculations, in making the diagnosis of occult tethered cord syndrome, even though Defendant, NISHIKAWA, was not, and is not, a licensed medical doctor in the State of New York.

156.     That the Defendants jointly and severally recommended the various surgeries solely for their own financial gain, knowing full well that there was no scientific proof that the surgeries would be of any benefit to the Plaintiff.

157.     That as a result of the knowingly false representations made by the Defendants, the Plaintiff, KEVIN EMMETT, was fraudulently induced into having tethered cord surgery on December 6, 2006 and craniocervical fusion surgery on August 6, 2007.

158.     That the Plaintiff, KEVIN EMMETT, detrimentally relied on the fraudulent information provided by the Defendants as set forth in the paragraphs above, and agreed to have

26

tethered cord surgery, which was performed by the Defendants on December 6, 2006, and later agreed to have the craniocervical fusion surgery on August 6, 2007.

159.    As a result of having surgery by the Defendants, the Plaintiff was caused to suffer serious physical, emotional and financial injuries and lost earnings.

160.    As a result of the fraud perpetrated by the Defendants upon the Plaintiff, KEVIN EMMETT, he is entitled to punitive damages.

161.    Accordingly, the Plaintiff, KEVIN EMMETT has suffered compensatory and punitive damages in an amount exceeding TEN MILLION ($10,000,000.00) DOLLARS.

## AS AND FOR A FOURTH CAUSE OF ACTION

### (VIOLATION OF NYS GBL SECTIONS 349 and 350)

162.    The Plaintiff, **KEVIN EMMETT**, repeats and realleges each and every allegation contained in Paragraphs numbered **"1"** through **"161"**, inclusive of this Verified Complaint, with the same force and effect as if set forth herein at length.

163.    That the Plaintiff, KEVIN EMMETT, was a consumer of medical services provided by Defendants in the State of New York.

164.    That the making and dissemination of the representations by the Defendants to Plaintiff, KEVIN EMMETT, as well as other consumers throughout the United States, as outlined in Paragraphs 75-122 were material and constitute deceptive business practices and acts and false advertising in violation of New York State General Business Law Sections 349 and 350.

165.    Through their aforementioned conduct, Defendants, MILHORAT, BOLOGNESE, REMY, ROONPRAPUNT, MORA, NISHIKAWA, CHEN, PINKHASOVA, NORTH SHORE -

LIJ, TCI and HARVEY CUSHING, aided and abetted one another and violated N.Y.S. General Business Law Sections 349 and 350.

166.    The Plaintiff, KEVIN EMMETT, was injured and sustained injuries as a result of the Defendants false business practices and false advertising, in that he was induced into having surgery, that not only failed to improve his symptoms, but made his medical condition worse, to the extent that he will suffer from spinal injuries that he sustained during the surgery of December 6, 2006, cranio cervical instability as a result of the surgery performed on June 6, 2007, and limited mobility as a result of the surgery on August 6, 2007 for the rest of his life.

167.    The Plaintiff, KEVIN EMMETT, seeks to recover actual compensatory damages for the injuries he sustained as a result of the Defendants' deceptive business practices, acts and false advertising.

168.    The Plaintiff, KEVIN EMMETT, seeks to recover punitive damages and reasonable attorney's fees and costs as a result of the Defendants' deceptive business practices, acts and false advertising pursuant to the New York State G.B.L. Section 349 and 350.

169.    That due to the Defendants deceptive business practices, the Plaintiff, KEVIN EMMETT, has been damaged in the sum of TEN MILLION ($10,000,000.00) DOLLARS.

### AS AND FOR A FIFTH CAUSE OF ACTION

(NEGLIGENT HIRING AND RETENTION)

170.    The Plaintiff, **KEVIN EMMETT,** repeats and realleges each and every allegation contained in Paragraphs numbered "1" through "169", inclusive of this Verified Complaint, with the same force and effect as if set forth herein at length.

171.    That the Defendants, MILHORAT, BOLOGNESE, ROONPRAPUNT, REMY, MORA, CHEN, PINKHASOVA and NISHIKAWA, were employees of Defendant, NORTH SHORE – LIJ.

172.    That the Defendant, NORTH SHORE – LIJ, owed the Plaintiff the duty to hire employees who were fit to treat the conditions he was suffering from.

173.    That the Defendants were unfit to render treatment to the Plaintiff, KEVIN EMMETT.

174.    That Defendant, NORTH SHORE – LIJ, should have known through the exercise of reasonable diligence, that the Defendants were unfit to practice medicine and dangerous and that said Defendants were performing unnecessary surgeries solely for financial gain, and should have further known that the Defendants were conducting human experimentation without having the proper consent.

175.    That there was a foreseeable risk of harm to the Plaintiff, KEVIN EMMETT.

176.    That Defendant, NORTH SHORE - LIJ's negligence in hiring and retaining the Defendants, MILHORAT, BOLOGNESE, ROONPRAPUNT, REMY, MORA, CHEN, PINKHASOVA and NISHIKAWA, caused the Plaintiff to suffer severe and irreversible injuries from which he will suffer for the rest of his life.

177.    That due to the Defendants' negligent hiring and retention, the Plaintiff, KEVIN EMMETT, has been damaged in the sum of TEN MILLION ($10,000,000.00) DOLLARS.

## AS AND FOR A SIXTH CAUSE OF ACTION

### (LOSS OF CONSORTIUM)

178. Plaintiff, KEVIN EMMETT, repeats and realleges each and every allegation contained in Paragraphs numbered "1" through "177", inclusive, of this Verified Complaint, with the same force and effect as if set forth herein at length.

179. That the Plaintiff, BRENDA EMMETT, at all times hereinafter mentioned, was, and is, the spouse of the Plaintiff, KEVIN EMMETT.

180. That as a result of the aforementioned injuries sustained by the Plaintiff, KEVIN EMMETT, the Plaintiff, BRENDA EMMETT, has been caused to lose the comfort, society, companionship, and consortium of her spouse.

181. As a direct and proximate result of the aforementioned injuries, the Plaintiff, BRENDA EMMETT, has been monetarily damaged in the sum of TEN MILLION ($10,000,000.00) DOLLARS.

**WHEREFORE**, the Plaintiffs, **KEVIN EMMETT and BRENDA EMMETT,** demand judgment against the Defendants

(a) on the FIRST CAUSE OF ACTION in the sum of TEN MILLION ($10,000,000.00) DOLLARS;

(b) on the SECOND CAUSE OF ACTION in the sum of TEN MILLION ($10,000,000.00) DOLLARS;

(c) on the THIRD CAUSE OF ACTION in the sum of TEN MILLION ($10,000,000.00) DOLLARS;

(d) on the FOURTH CAUSE OF ACTION in the sum of TEN MILLION ($10,000,000.00) DOLLARS;

(e)    on the FIFTH CAUSE OF ACTION in the sum of TEN MILLION ($10,000,000.00) DOLLARS;  and

(f)    on the SIXTH CAUSE OF ACTION in the sum of TEN MILLION ($10,000,000.00) DOLLARS;

together with costs, interest and disbursements of this action, and for such other and further relief that this Court deems just and proper.

Dated: New York, New York
      June 4, 2009

                     **GOLDSMITH CTORIDES & RODRIGUEZ, L.L.P.**
                     Attorneys for Plaintiffs

By:

                     LEE S. GOLDSMITH (LSG 8875)
                     CHRISTINA CTORIDES (CC 5271)
                     A Member of the Firm
                     Office & P.O. Address
                     747 Third Avenue, 37th Floor
                     New York, NY  10017
                     (212) 421-5500

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
KEVIN EMMETT and BRENDA EMMETT,

                      Plaintiffs,

       -against-

THOMAS H. MILHORAT, M.D., PAOLO A.
BOLOGNESE, M.D., MISAO NISHIKAWA, M.D.,
THIERRY REMY, M.D., CHANLAND
ROONPRAPUNT, M.D., SOL MORA, M.D.,
JOHN X. CHEN, M.D., DORA PINKHASOVA,
M.D., NORTH SHORE – LONG ISLAND JEWISH
HEALTH SYSTEM, INC. , THE CHIARI
INSTITUTE and HARVEY CUSHING
INSTITUTES OF NEUROSCIENCE,

                   Defendants.
-------------------------------------------------------------------X

Civil Action No.:


**JURY DEMAND**


## JURY DEMAND

      **PLEASE TAKE NOTICE** that the Plaintiffs demand a trial by jury on all the issues

herein.

Dated: New York, New York
       June 4, 2009


                **GOLDSMITH CTORIDES & RODRIGUEZ, L.L.P.**
                Attorneys for Plaintiffs

       By:   _____
                LEE S. GOLDSMITH (LSG 8875)
                CHRISTINA CTORIDES (CC 5271)
                A Member of the Firm
                Office & P.O. Address
                747 Third Avenue, 37th Floor
                New York, NY  10017
                (212) 421-5500

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
KEVIN EMMET and BRENDAN EMMETT,

                         Plaintiffs,

        -against-

THOMAS H. MILHORAT, M.D., PAOLO A.
BOLOGNESE, M.D., MISAO NISHIKAWA, M.D.,
THIERRY REMY, M.D., CHANLAND
ROONPRAPUNT, M.D., SOL MORA, M.D.,
JOHN X. CHEN, M.D., DORA PINKHASOVA,
M.D., NORTH SHORE – LONG ISLAND JEWISH
HEALTH SYSTEM, INC. , THE CHIARI
INSTITUTE and HARVEY CUSHING
INSTITUTES OF NEUROSCIENCE,

                         Defendants.
-----------------------------------------------------------------X

**Civil Action No.:**

**CERTIFICATE
OF MERIT**

STATE OF NEW YORK  )
                   : ss.:
COUNTY OF NEW YORK)

      **LEE S. GOLDSMITH,** a member of the law firm of **GOLDSMITH, CTORIDES &**

**RODRIGUEZ, L.L.P.,** hereby affirms the truth of the following:

      That pursuant to the Rules of Civil Procedure §3012(a), the deponent states that he has

conferred with a physician who is a specialist in the field in which the Defendants practice

medicine and has been advised that sufficient basis exist for the commencement of this medical

malpractice suit.

                                            **LEE S. GOLDSMITH**

Sworn to before me this
4th day of June, 2009

_____
Notary Public

CHRISTINA CTORIDES
Notary Public, State of New York
No. 02CT5032748
Qualified in New York
Commission Expires August 29, 20 10

STATE OF NEW YORK   )
                         : ss.:
COUNTY OF NEW YORK  )

**LEE S. GOLDSMITH**, being duly sworn, deposes and says:

I am a member of the law firm of **GOLDSMITH, CTORIDES & RODRIGUEZ, L.L.P.,** attorneys for the Plaintiffs in the within action. That I have read the foregoing Complaint and know the contents thereof; that the same is true, to my knowledge, except as to the within matters stated to be alleged upon information and belief, and that, as to those, I believe them to be true. That the sources of my information are papers and records in Deponent's possession and file. That the reason this Verification is made by your Deponent, and not by said Plaintiffs, are that the Plaintiffs do not reside within the County wherein your Deponent maintains his office.

**LEE S. GOLDSMITH**

Sworn to before me this
4th day of June, 2009.

Notary Public

CHRISTINA CTORIDES
Notary Public, State of New York
No. 02CT5032748
Qualified in New York
Commission Expires August 29, 20 10